IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02880-WYD-KLM

JAMES S. GRADY, doing business as Group Five Photosports,

　　　Plaintiff,

v.

WILLIAM SWISHER,

　　　Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　　This matter is before the Court on Plaintiff's **Motion for Final Default Judgment, Damages, Attorney's Fees & Costs, and Permanent Injunction Against Defendant William Swisher** [#33][1] (the "Motion").   Pursuant to 28 U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c), the Motion is referred to this Court for recommendation. [#34]. For the reasons set forth below, the Court recommends that the Motion [#33] be **GRANTED in part**.

## I. BACKGROUND

### A.　Procedural History

　　　Plaintiff initiated this lawsuit on November 4, 2011, alleging violations of the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* ("Copyright Act") and the Lanham

_____

[1]　"[#33]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Recommendation.

Act, 15 U.S.C. §§ *et seq.* ("Trademark Act").  *Compl.* [#1] at 1.  Defendant was served with the Summons and Complaint on November 13, 2013.  [#29].  Defendant, however, failed to answer or otherwise respond to Plaintiff's Complaint.  Following Plaintiff's request for entry of default pursuant to Fed. R. Civ. P. 55(a) [#31], the Clerk of Court entered default against Defendant on December 19, 2013 [#32].  Defendant has not responded to the Clerk's entry of default or the present Motion.

## B.   Factual Allegations

Plaintiff is a Colorado resident doing business as Group Five Photosports, which "produces, markets and distributes premium quality entertainment products, including wholly original Internet content, Internet websites, videos, DVDs and photographs."  *Compl.* [#1] ¶ 10.  Plaintiff is the creator and owner of a group of 3259 photographs and videos (the "Photographs" and/or "Videos").  *Id.* ¶ 31.  The Photographs and Videos are all registered with the United States Copyright Office.  *Id.* ¶¶ 11, 31.  They are distributed through the websites TrueTeenBabes.com, ModelLibby.com, and LibbyTurner.com.  *Id.* ¶ 2.  Plaintiff has registered the trademark TrueTeenBabes.  *Id.* ¶¶ 5, 12.  This trademark appears on all of the Photographs and appears at the beginning and end of each Video recording.  *Id.* ¶ 11.

Defendant is an individual who is alleged by Plaintiff to be a supplier of Plaintiff's "copyrighted Photographs and Videos to illegal photo, video and DVD trading websites, pay to view websites, online forums, clubs and groups."  *Id.* ¶ 17.  Plaintiff alleges that Defendant purchased subscriptions to Plaintiff's TrueTeenBabes publication, to LibbyTurner.com, and to ModelLibby.com. *Id.* ¶¶ 35, 36, 40, 46, 48. Plaintiff further alleges that Defendant downloaded the Photographs and Videos and then willfully distributed them

to others over the Internet.  *Id.* ¶¶ 55-57.  He did so by uploading the Photographs and Videos onto four websites located at DarkJB.com, Megaporn.com, Megaupload.com, and Multiupload.com.  *Id.* ¶¶ 26-29.  He instructed viewers on how they could download the Photographs and Videos without compensation to Plaintiff.  *Id.* ¶¶ 52, 56.  However, Defendant sometimes received compensation for sharing the Photographs and Videos.  *See, e.g.*, *id.* ¶ 41.  Defendant did not obtain Plaintiff's permission to share the Photographs and Videos in any manner.  *Id.* ¶¶ 25, 52.

The precise time line of events is important to the Court's determination of damages, and the Court thus recites Plaintiff's specific allegations and evidence to that effect here. On April 11, 2006, Plaintiff first published "Libby Turner TTB051-072."[2]  *Certificate of Registration* ("*Cert. of Reg.*") [#10-6].  On September 30, 2006, Plaintiff first published "Libby Turner TTB001-025."  *Cert. of Reg.* [#1] at 26.  On January 1, 2007, Plaintiff first published "ModelLibby HDV001-010."  *Cert. of Reg.* [#10-3].  On June 1, 2007, Plaintiff first published "ModelLibby HDV011-024."  *Cert. of Reg.* [#10-4].  On March 24, 2008, Plaintiff first published "Libby Turner TTB026-050."  *Cert. of Reg.* [#10-5].

On February 7, 2009, Defendant purchased a set of Photographs and Video clips from ModelLibby.com.  *Compl.* [#1] ¶ 35.  Later that same day, he purchased a subscription to Plaintiff's TrueTeenBabes publication.  *Id.* ¶ 36.  On April 3, 2009, Defendant uploaded 24 Videos to Megaporn.com.  *Id.* ¶ 38.  That same day, he posted 24 Videos from

---

[2]   It is unclear whether each publication/copyright at issue in this case consisted of only Photographs, only Videos, or both.  It is also unclear precisely how many Photographs and/or Videos were the subject of each publication/copyright, as the numbers appear to refer to sets of copyrighted materials as opposed to individual Photographs and Videos.

TrueTeenBabes.com and ModelLibby.com on a forum located at DarkJB.com.[3]  *Id.* ¶ 39.

On June 1, 2009, Plaintiff first published "TrueTeenBabes001-075" on TrueTeenBabes.com.  *Cert. of Reg.* [#1] at 27.  On June 30, 2009, that work was effectively registered with the Copyright Office under Registration Number VA 1-692-436.  *Id.*  On September 8, 2009, "ModelLibby HDV001-010" was effectively registered with the Copyright Office under Registration Number VA 1-716-734.  *Cert. of Reg.* [#10-3].  That same day, "ModelLibby HDV011-024" was also effectively registered with the Copyright Office, under Registration Number VA 1-716-735.  *Cert. of Reg.* [#10-4].

On October 18, 2009, Defendant purchased another subscription to Plaintiff's TrueTeenBabes publication.  *Compl.* [#1] ¶ 40.  On October 21, 2009, Defendant uploaded 150 Photographs to Megaupload.com.  *Id.* ¶ 41.  That same day, he uploaded 150 Photographs from TrueTeenBabes.com (Sets 46-51) to DarkJB.com.  *Id.* ¶ 42.

On October 29, 2009, "Libby Turner TTB001-025" was effectively registered with the Copyright Office under Registration Number VA 1-703-455.  *Cert. of Reg.* [#1] at 26.

On November 3, 2009, Defendant uploaded 25 Photographs  to Megaupload.com.  *Compl.* [#1] ¶ 43.  That same day, he uploaded 25 Photographs from TrueTeenBabes.com (Set 52) to DarkJB.com.  *Id.* ¶ 44.  On May 10, 2010, Defendant uploaded 24 Videos from ModelLibby.com to "The Pirate Bay."  *Id.* ¶ 45.  On July 22, 2010, Defendant purchased a subscription to LibbyTurner.com.  *Id.* ¶ 46.  On October 1, 2010, Defendant uploaded 813 Photographs and Videos from LibbyTurner.com to "The Pirate Bay."  *Id.* ¶ 47.  On

---

[3]  Plaintiff alleges that the posting of these 24 Videos constituted 48 instances of direct copyright infringement, because Defendant allegedly uploaded them first to another section of the DarkJB.com website, but they were erased due to technical errors.  *Compl.* [#1] ¶ 39.

December 3, 2010, Defendant purchased another subscription to TrueTeenBabes.com. *Id.* ¶ 48.   On December 4, 2010, Defendant uploaded 1000 Photographs to Multiupload.com. *Id.* ¶ 49.  That same day, he uploaded 1000 Photographs and Videos from TrueTeenBabes.com (Sets 53-72) to DarkJB.com. *Id.* ¶ 50.

On September 20, 2011, "Libby Turner TTB026-050" was effectively registered with the Copyright Office under Registration Number VA 1-791-720. *Cert. of Reg.* [#10-5].  On November 4, 2011, "Libby Turner TTB051-072" was effectively registered with the Copyright Office under Registration Number VA 1-801-229. *Cert. of Reg.* [#10-6].

In total, Plaintiff identifies 3259 instances of alleged unlawful uploading of copyrighted Photographs and Videos by Defendant.  Based on these facts, Plaintiff asserts four claims: (1) copyright infringement; (2) contributory copyright infringement; (3) vicarious copyright infringement; and (4) trademark infringement—false designation of origin. *Id.* ¶¶ 53-81.  Plaintiff seeks statutory damages in the amount of $3,259,000.00 plus $9,393.29 in attorney's fees. *Motion* [#33] at 9.  Plaintiff also seeks injunctive relief "permanently enjoin[ing] Defendant from engaging in any further infringement of Grady-owned copyrighted works." *Id.* at 2.

## II.  ANALYSIS

Pursuant to Fed. R. Civ. P. 55(a), default may enter against a party who fails to appear or otherwise defend a lawsuit.  Here, entry of default was proper because Defendant failed to respond to Plaintiff's Complaint.  Before proceeding with a default judgment, however, the Court must consider whether it has jurisdiction, whether the facts establish a legitimate basis for the entry of judgment, and whether the damages can be ascertained.

## A.    Jurisdiction and Venue

In determining whether a default judgment is warranted, the Court must first consider whether it has jurisdiction over the subject matter and the defendant. *Dennis Garberg & Associates, Inc., v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). The Court must do so in consideration of the well-established rule that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *United States v. 51 Pieces of Real Prop.,* 17 F.3d 1306, 1309 (10th Cir. 1994).

### 1.    Subject Matter Jurisdiction

Plaintiff asserts that the Court has jurisdiction over this matter because the action arises out of alleged violations of the Copyright Act and the Trademark Act, each of which are federal statutes. *Compl.* [#1] at 1. Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Because Plaintiff's causes of action arise under federal law, the Court has jurisdiction over the subject matter of this litigation.

### 2.    Personal Jurisdiction

In addition to subject matter jurisdiction, entry of default judgment in a civil case requires personal jurisdiction over the defendant. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).

### a.    Service

Before finding that the Court has personal jurisdiction over Defendant, however, the

Court must first address the adequacy of service.  *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010).  Plaintiff's Complaint identifies Defendant as an individual.  *Compl.* [#1] ¶ 19.  Therefore, the Court analyzes the adequacy of service in the context of Fed. R. Civ. P. 4(e), which establishes the requirements for service of an individual within a judicial district of the United States.  Rule 4(e) provides that service on an individual in a judicial district of the United States is adequate if effected in one of four ways, including by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P. 4(e)(2)(B).

The situation at hand involves a clear case of evasion of service.  In a Response [#24] to an Order to Show Cause [#20], Plaintiff summarized his efforts to serve Defendant, which the Court finds important to recite in full to demonstrate the lengths to which Plaintiff has gone to properly serve Defendant:

> The instant action was filed on November 4, 2011 against Defendant William Swisher ("Swisher").  In an effort to save attorneys' fees, Grady took on the task of coordinating service of process himself.  Grady was quickly able to locate a process serve in Ohio where Swisher resided who routinely served process. On November 5, 2011, Grady contacted and retained Mr. Richards, a process server from Buckeye Attorney Service to serve the Defendant for $100.  Despite multiple attempts, by November 19, 2011, Mr. Richards was unable to serve the Defendant because Defendant refused to answer the door at his residence.  Due to the original process server's indication that Defendant would not respond to the door and he was unable to serve him, Mr. Grady began his own online investigation and even offered a reward on Craigslist.  On November 22, 2011, Grady received a response to his Craigslist post from jtomja1974@gmail.com asking about the reward offer.  Searching the email address on Facebook revealed that the email address belonged to Jim Tomlinson, the brother-in-law of the Defendant.  Grady emailed a copy of the Summons and Complaint in response and his brother-in-law responded asking the amount of the reward.
>
> On November 23, 2011, Grady received another email purporting to respond

to his Craigslist post from the pseudonym "Kelly Stewart" using the email address kellys_76@yahoo.com asking about the reward offer.  The email originated from the same IP address used by the Defendant.  Grady responded to the email again with a copy of the Summons and Complaint and also attached the evidence that "Kelly Stewart" was none other than the Defendant.  On November 28, 2011, Grady sent a copy of the Summons and Complaint by Certified mail to William Swisher at his residence at 805 Austin Ave., Akron, Ohio 44306, which the Defendant himself signed.  Grady was unaware at that time that Ohio law provides that a defendant may be served by the clerk of court by certified or express mail.  On December 1, 2011, the Defendant used his own e-mail address, bswish76@yahoo.com, to email Grady.  In response, Grady provided the Defendant with the name and contact information for the process server, Mr. Richards, so that the Defendant could arrange for service in a convenient and cooperative manner. Over the course of two days, Grady and Defendant exchanged emails. Defendant refused to make arrangements with the process server and Defendant indicated as part of the grounds that he had already received the lawsuit that Grady had sent him registered mail.

After Defendant continued to refuse to be served, on December 10, 2011, Grady retained Mr. Strickland of Accurate Investigations in Ohio to track down and serve the Defendant at a cost of $500.  The process server went to Mr. Swisher's residence on December 16, 2011 and served a white male who appeared to be approximately in his fifties.  This man told the process server that Swisher was presently inside the residence and took the papers for him.  A return of service was filed by Grady on January 3, 2012.  A subsequent investigator retained by Grady learned from Defendant's sister-in-law that Defendant lived with his parents.  Westlaw investigative research identifies that there are exactly three members of the household located at 805 Austin Avenue, Akron, OH 44306 at which the process server served the Summons and Complaint.   The household members are the Defendant William Swisher, born in December of 1976, a woman named Naomi Swisher born in April of 1953 (believed to be Defendant's mother), and the head of the household is identified as Gilbert Swisher, a married man born in December of 1951 (believed to be Defendant's father).  Based upon the foregoing, the man served the Summons and Complaint for Defendant is Gilbert Swisher, the Defendant's father, who resides in the same household as Defendant.

Swisher failed to respond to the Complaint, and as such, on February 13, 2012, Grady moved this Honorable Court for Default, which was entered by the Clerk of this Court on February 14, 2012.  Then on March 13, 2012, Grady filed a Motion for Default Judgment.  On December 20, 2012, the Court entered an Order denying Grady's Motion for a Default Judgment without prejudice and authorizing Grady to submit additional information to

substantiate the requirement had been met that the papers be left with a person of suitable age who resides at the defendant's household.  The Court gave Grady until February 4, 2013 to effectuate service or to [provide] evidence that the requirements of Rule 4(e) of the Federal Rules of Civil Procedure had been met.  On February 4, 2013, Grady filed a motion requesting the Court either reconsider its prior order or extend the time for service.   On February 6, 2013, the Court denied the request for reconsideration pointing out that the Court's issue with the affidavit of service was that it did not clarify that a man of the description served resided at the residence with the Defendant and granted the extension of time for Grady to serve Defendant or file an amended affidavit evidencing that all of the requirements were met.

Since the prior process server and investigator had difficulty serving Defendant, Grady retained a third investigator, Beacon Investigative Solutions ("Beacon"), in the hopes that a fresh face might have better chances of [getting] Defendant to answer his door.  Beacon and Grady's staff were able to confirm that Defendant resides with his parents at the address that he was served.  Beacon attempted service on Defendant no less than 16 times, generally calling first to confirm Defendant was home and then approaching the residence.  Each time, despite phone confirmation that Defendant was at home, Defendant refused to answer the door.  Despite these attempts, Beacon was unsuccessful.  The Court issued an Order to Show Cause on April 2, 2013 requiring either proof of service or a response.  Because Defendant would not answer the door in any of Beacon's 16 attempts to serve Defendant, Grady had to file another motion seeking an extension of time to serve Defendant on April 30, 2013.  Grady had contacted the Sheriff's Department where Defendant lives and inquired about service through their Department.  Grady was informed that the Sheriff's Department required a form filled out by the Court requesting they serve process.  This was included in Grady's April 30, 2013 motion.  On May 9, 2013, the Court granted Grady's Motion for an extension and gave Grady through July 15, 2013 to serve Defendant.   Grady received the email PACER notification forwarded by his former counsel indicating the motion had been granted, providing an extension of time to serve Defendant and allowing us to use the Sheriff's Department to serve Defendant.  Grady asked his former counsel about the status of receiving the form needed by the Sheriff's Department from the Court.  Grady understood from his former counsel that the form would be sent in the mail, but that it had not yet been received.  Grady inquired of his former counsel on multiple occasions as to the status of his receipt of the form from the Court such that Grady could send it to the Summit County, Ohio Sheriff's Department to serve Defendant.

Having heard no news on the form being mailed, recently Grady went to the PACER website himself, searched for the case, and pulled the prior

documents in the case.   At that time, Grady discovered that the Court included the form with its Order date May 9, 2013.  It appears that Grady's former counsel incorrectly believed the Court would mail the form and did not realize it was attached to the Court's Order.  Promptly after discovering the existence of the form in the Court's Order, Grady quickly sent the form along with a check to the Summit County Sheriff's Department. This past week [in mid-October 2013], the Summit County Sheriff's Department contacted Grady and advised that they received the form, but that they only accept checks from law firms and instead require a money order from other types of entities or individuals.  Grady immediately obtained a money order and sent the money order to the Summit County Sheriff's Department.  The Summit County Sheriff's Department advised Grady that they are generally able to attempt service within two days of receipt of a money order and that it frequently only requires one attempt for them to effectuate service.   In addition to Grady and his paid staff's investigative time, Grady has spent over $2,000 attempting to serve Defendant.

*Response to Order to Show Cause* [#24] at 2-7 (internal citations and paragraph formatting

omitted).

On November 15, 2013, Plaintiff filed a return of service demonstrating that a private

process server personally delivered the Summons and Complaint on November 13, 2013

to a white male in his fifties, who was purportedly Defendant's father Gil Swisher and who

lived at Defendant's residence on Austin Avenue in Akron, Ohio.  *Summons* [#29] at 1.

Plaintiff attached an affidavit from the process server that recounted his efforts to serve

Defendant:

West Law, Radaris, and a Local Public People Search were used to located William Swisher at 805 Austin Ave., Akron, Oh. 44306.  Consistently these sources indicated that he lived at this address.  My first service attempt was at 12:20 p.m. 11/13/2013.  Nobody answered the door.  I photographed a blue Chevrolet, Astro van bearing Ohio Registration # EED7856 in the driveway.  I made contact with Tonya Cledg at 806 Austin Ave. Akron, OH. Ms. Cledg stated that she sees Billy Swisher at 805 Austin Ave. Akron, OH all the time and that he just left 15 minutes prior to my arrival.  I made contact with Kathy Pickering located at 809 Austin Ave. Akron, OH.  Ms. Pickering stated that Billy moved in with his Mom and Dad about six months ago and sees Billy smoking on the front porch almost every day when the weather is nice.  Ms. Pickering told me the blue van in the driveway is Billy's Mom and

Dad's.  Ms. Pickering stated that Billy's Mother rarely leaves the house.  I took up a surveillance point down the street from 805 Austin Ave. Akron, OH.  At approximately 1:30pm, I attempted another serve at the residence.  My attempt went unanswered.  I saw a white 9x12 envelope sticking out of the mailbox bearing the name Gil Swisher, 805 Austin Ave. Akron, OH.  I photographed the address label to document residency.  A blue, older model Suv., slowed down.  The driver was a M/W, mid 30's, dark hair with a few days growth of a beard.  The driver of the Suv., turned his head hard and looked at me.  The vehicle left the area abruptly.  I was unable to view the registration.  At approximately 1:45pm, I left the area.

At approximately 2:10pm I returned to 805 Austin Ave. Akron, OH.  I observed that the mail which had been sticking out of the mailbox was gone, and a PT Cruiser bearing Ohio registration #FYG5213 was parked in the driveway.  I knocked on the side door, and a M/W approximately 55 years of age answered the door.  I identified myself and asked if Billy was home.  The subject stated that Billy doesn't live here.  I asked the subject what was his name.  He identified himself as Gil, Billy's Father.  Gil said, "I told the other Investigators and Sheriff's Officers the same thing."  I asked Gil if he knew where Billy was.  Gil told me "I don't fucking talk to him or see him."  "I'm fucking tired of this shit from that asshole in Colorado."  Gil then offered for me to search his house.  I declined his offer.  I informed Gil that Billy was seen at the residence earlier this afternoon.  Gil said, "Don't tell me what fucking goes on in my house."  I took the Summons and Complaint out of my pocket.  I informed Gil of the documents.  Gil said, " I will not accept the papers."  Gil then said, "They will be thrown out of court like the last ones."  I asked Gil, "How do you know what happens in court in Colorado if you don't communicate with Billy?"  I asked Gil if he would like all of this to stop.  Gil said, "Yes."  I asked Gil to call Billy on his cell phone.  Gil said, "I will not call Billy."  I laid the Summons and Complaint at Gil's feet across the threshold of the door.  Gil then kicked the Summons and Complaint out of the house onto the driveway.  Gil said, "Get the fuck out of here and get the fuck off my property."  I then left the area.

*Id.* at 2-3 (internal paragraph formatting omitted).  Plaintiff subsequently filed the proof of service, obtained entry of default from the Clerk of Court, and filed the present Motion seeking default judgment against Defendant, as outlined above.

The Tenth Circuit Court of Appeals has emphasized that the keystone to service is whether the method is "reasonably calculated to apprise the defendant of a pending action":

It is well settled, that as to notice, due process does not require exact

> certainty.  *Wuchter v. Pizzutti*, 276 U.S. 13, 24 (1928).  The United States
> Supreme Court has held in both [*International Shoe v. State of Washington*,
> 326 U.S. 310 (1945)] and [*McGee v. International Life Insurance Company*,
> 355 U.S. 220 (1957)] that the sending by mail of a certified copy of a
> summons and complaint is reasonably calculated to apprise the defendant
> of a pending action, thereby satisfying the requirements of due process.  The
> mere fact that the defendant did not actually scrutinize and read the
> summons and complaint is not violative of the standards of fair play and
> substantial justice required by due process.

*Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 944 (10th Cir. 1987).

The Court need not determine here whether Plaintiff's service attempts, and specifically the final attempt when the process server laid the documents on the threshold of Plaintiff's residence in front of Plaintiff's father, strictly complied with any of the relevant notice statutes, because, as the Tenth Circuit found in *Nikwei*, the Court here finds that "[g]iven the foregoing authority requiring substantial, as opposed to strict compliance with the notice statutes, and [Defendant's] egregious conduct in attempting to avoid service, this Court holds the notice statutes were sufficiently complied with."  822 F.2d at 944.  The Tenth Circuit has reasserted the Supreme Court's dicta that there is "a general  trend of authority toward sustaining the validity of service of process, if the statutory provisions in themselves indicate that there is a reasonable probability that if the statutes are complied with, the defendant will receive actual notice . . . ."  *Id.* (quoting *Wuchter*, 276 U.S. at 24).

> If defendant chooses to flout the notice and refuse to accept it, he will not be
> permitted to say in the next breath that he has not been served.
> Furthermore, it would create an intolerable situation if the defendant could,
> by his own wilful act, or refusal to act, prevent the plaintiff from maintaining
> his action.  Consonant with the aforementioned accepted principles, if, as in
> the instant litigation, it was shown the defendant refused either to sign the
> receipt or open the letter, service would still be effectuated if there were proof
> that the papers were actually sent to and received by the defendant.  In such
> a situation, the defendant will neither be heard to complain that he has not
> received notice nor that the notice statutes have not been strictly complied
> with.

A case factually analogous to the case at bar is *Wax v. Van Marter*, 124 Pa. Super. 573, 189 A. 537 (1936). The defendant in *Wax* was found to have refused service. As in *Nikwei*, the defendant claimed that the service may have been refused by a third person. In contrast to *Nikwei*, there was nothing in the record that showed the circumstances under which service was had. Nevertheless, the reviewing court sustained the service and concluded it was plausible the defendant's scheme was to evade service by refusing to accept it. Such willful, artificial conduct . . . ought not to be rewarded with success. Fortunately, a good service does not depend on whether the signature of the defendant is on the return receipt, but rather on the reasonable probability that the notice reached him. Statutes are to be construed so as may best effectuate the intentions of the makers. In *Nikwei*, the record is replete with evidence that service was successful either as against [the defendant] or his wife. A defendant should not be permitted to evade the notice statute on highly technical grounds by his acts of avoidance. Though there is sufficient proof for the trial court to have concluded that [the defendant] was served, the record is also peppered with evidence that [the defendant] was endeavoring to avoid service by concealing his whereabouts. Where a defendant attempts to hide, thereby making service by mail nearly impossible, service is perfected and the court has jurisdiction.

*Nikwei*, 822 F.2d at 945 (internal citations and quotation marks omitted).

Based on the foregoing authority and on the full record of this case, the Court finds that, at a minimum, Plaintiff substantially complied with the relevant notice statutes. "The aforecited case law is patently clear that a defendant cannot refuse or avoid service on a technical ground, and then exclaim he has not been correctly served." *Id.* at 946. Defendant has had reasonable notice of the action against him and has had an opportunity to defend against it. The law requires no more regarding service. *Id.*

### b.    Specific Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "[P]laintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis*

-13-

*Garberg & Assoc., Inc.*, 115 F.3d at 773.

In *Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011), the Tenth Circuit Court of Appeals clarified the law in this Circuit regarding the intersection of personal jurisdiction and the internet. In that case, the court found that evidence that a website forum user posted a message on the website was insufficient to establish either specific or general personal jurisdiction in Oklahoma over the forum user, because the message was geographically neutral and the forum was directed at a world-wide audience of market traders with no inherent interest or tie to Oklahoma.   *Shrader*, 633 F.3d at 1248.   The Court took the opportunity to emphasize that, in determining whether personal jurisdiction exists over a particular defendant, "courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.* at 1241.   In other words, "it is necessary to adapt the analysis of personal jurisdiction [to internet activity] by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation at the forum state . . . ." *Id.* (emphasis in original).   Without expressly adopting the test, the Tenth Circuit proceeded to approvingly quote the Fourth Circuit Court of Appeals' discussion on this issue in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002):

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.   Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received.   Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable

in courts located in the State.

*Shrader*, 633 F.3d at 1240-41.

Here, personal jurisdiction over Defendant is proper in Colorado because Defendant allegedly infringed Plaintiff's copyrights by transacting business in Colorado.  *Compl.* [#1] ¶¶ 7-8; *see Grady v. Bremer*, No. 11-cv-02586-WYD-MJW, 2012 WL 370281, at *1 (D. Colo. Feb. 2, 2012) (finding that personal jurisdiction was proper in a similar case brought by this same Plaintiff against a different defendant accused of copyright infringement) (citing C.R.S. § 13-1-124(1)(a) (providing that "any person, whether or not a resident of the state of Colorado, . . . submits [himself] to the jurisdiction of the courts of this state concerning any cause of action arising from . . . [t]he transaction of any business within this state").  The information provided by Plaintiff demonstrates that he is a resident of Colorado with his principal place of business located in Littleton, Colorado.  *Compl.* [#1] ¶ 10.  He is the registered owner of the copyrights for the Photographs and Videos displayed within the subscriber areas for the websites TrueTeenBabes.com, ModelLibby.com, and LibbyTurner.com.  Defendant purchased Photographs, Videos, and/or subscriptions to Plaintiff's websites a minimum of five times between February 7, 2009 and December 3, 2010.  Defendant is a competitor of Plaintiff and supplies Plaintiff's Photographs and Videos to others also in competition with Plaintiff.  *Id.* ¶ 18.  Further, as a paying member of the TrueTeenBabes.com website, Defendant agreed to the Terms of Use contract which designates Colorado as the jurisdiction in which legal action may be taken.  *Id.* ¶ 7.

Defendant has intentionally directed his internet activity toward the state of Colorado by making multiple purchases over a two-year time frame from a business that is solely owned and located in this state.  He has expressly done so through his purchases, his

repeated interactions in the state, and his agreement to the "Terms of Use" contract.  By redistributing his purchases in direct violation of the Terms of Use, Defendant has subjected himself to a potential cause of action in this state's courts.  *See Compl.* [#1] ¶ 25 ("You also agree to not distribute any of the stories, videos, interviews, or photographs contained within this publication, in whole or part, without prior written consent . . . ."). Further, a party may consent to personal jurisdiction by agreeing to a forum selection clause contained in a contract, which is deemed to be prima facie valid.  *See Burger King. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *Milk 'N' More, Inc. v. Beauvart*, 963 F.2d 1342, 1346 (10th Cir. 1992).  Defendant has made such an agreement here.  *See, e.g.*, *Compl.* [#1] ¶ 25 (agreeing "[t]hat the laws of United States and the state of Colorado shall govern this agreement").

Thus, having found that Plaintiff has properly served Defendant and that other requirements of specific jurisdiction have been met, the Court finds that it has personal jurisdiction over Defendant.  *See also Grady v. Brodersen*, No. 13-cv-00752-REB-BNB, 2014 WL 519245 (D. Colo. Feb. 10, 2014) (finding that personal jurisdiction was proper in a similar case brought by this same Plaintiff against a different defendant accused of copyright infringement).

### 3.    Venue

When Defendant subscribed to Plaintiff's websites, he contractually agreed to a number of terms and conditions, including that venue for any action under the subscription agreement would be in the state of Colorado.  *Compl.* [#1] ¶ 25.  The Court therefore finds that venue is proper pursuant to 28 U.S.C. § 1391(b)(2), (3).  *See Grady*, 2012 WL 370281, at *2.

**B.     Entry of Default Judgment**

Even after a proper entry of default, the Court must decide "'whether the unchallenged facts constitute a legitimate cause of action'" such that a judgment should be entered. *Bixler,* 596 F.3d at 762 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Fed. Prac. & Proc.* § 2688, at 63 (3d ed. 1998)). "'There must be a sufficient basis in the pleadings for the judgment entered.'" *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

Upon review of a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). The Court deems the well-pled facts of the complaint to be true. *Vibe Tech., LLC v. Suddath*, No. 06-cv-00812, 2009 WL 2055186, at *1 (D. Colo. 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Undisputed facts set forth by the moving party in affidavits and exhibits are also accepted as true. *Id.*

**1.     Copyright Infringement**

A plaintiff must provide evidence of two elements to prove a copyright infringement claim: (1) ownership of a valid copyright, and (2) unlawful appropriation of protected portions of the copyrighted work. *See Shell v. Am. Family Rights Ass'n*, __ F. Supp. 2d __,

__, 2012 WL 4476641, at *12 (D. Colo. Sept. 28, 2012) (citing *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009)).   The second element requires the plaintiff to demonstrate that: (1) the defendant actually copied the copyrighted work, and (2) the elements of the copied work were "protected expression and of such importance to the copied work that the appropriation is actionable."   *Shell*, 2012 WL 4476641, at *12 (citing *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993)).

Treating the allegations as true, the Complaint and documentation attached to the Complaint and the Motion sufficiently demonstrate the existence of valid copyrights, the first element of a copyright infringement claim.   *See Cert. of Reg.* [#1] at 26-27; [#10-3, #10-4, #10-5, #10-6]; *see also Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (stating that a certificate of copyright registration provides a prima facie presumption of validity).

Turning to the second element, that Defendant unlawfully appropriated the copyrighted work, the Complaint states that Defendant downloaded the Photographs and Videos and then willfully and maliciously distributed them to others over the Internet by uploading them onto four websites: DarkJB.com, Megaporn.com, Megaupload.com, and Multiupload.com.   *Id.* ¶¶ 26-29, 55-57.   Defendant did not obtain Plaintiff's permission to share the Photographs and Videos and did not compensate Plaintiff for doing so.   *Id.* ¶¶ 25, 52, 56.   Based on these allegations, the Court finds that Plaintiff has sufficiently alleged the second element of his claim, that Defendant unlawfully appropriated Plaintiff's copyrighted works.   *See Shell*, 2012 WL 4476641, at *13.

The Court therefore concludes that Plaintiff has demonstrated actionable copyright

infringement by Defendant.[4]

## 2.   Relief

In addition to finding that Plaintiff has a legal basis for relief, a default judgment cannot be entered until the amount of damages has been ascertained.  *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984).  Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Plaintiff requests entry of a default judgment in the amounts of $3,259,000.00 in statutory damages and $9,393.29 in attorneys' fees and costs.  Plaintiff also seeks taxable costs and a permanent injunction.  The Court addresses each request in turn.

### a.   Statutory Damages

A plaintiff successfully demonstrating illegal copyright infringement by a defendant is entitled to receive actual damages but may elect, instead, to recover an award of statutory damages.  17 U.S.C. § 504(b), (c).  Plaintiff here has elected to recover statutory damages.[5]  *Motion* [#33] at 3.  Thus, at the discretion of the Court, Plaintiff may recover an award of statutory damages "for all infringements involved in the action, with respect to any one work, in a sum of not less than $750 or more than $30,000."  17 U.S.C. § 504(c). Plaintiff here seeks $1,000.00 in statutory damages for each of the 3259 Photographs and Videos alleged infringed upon, for a total of $3,259,000.00.  *Motion* [#33] at 3.  In determining statutory damages, "all the parts of a compilation or derivative work constitute

---

[4]     Plaintiff does not seek entry of default judgment on his claims of contributory and vicarious copyright infringement or trademark infringement.  *See generally Motion* [#33].

[5]     Pursuant to 17 U.S.C. § 504(c)(2), Plaintiff may also request an additional award of $150,000 in statutory damages for each willful infringement of his copyrights.  Plaintiff has not elected to do so here.  *Motion* [#33] at 5.

one work." 17 U.S.C. § 504(c)(1).

### i.    Availability of Damages and Fees Under 17 U.S.C. § 412

A plaintiff may not seek statutory damages pursuant to 17 U.S.C. § 504(c) if the

alleged infringement occurred prior to the registration date of the copyright. *See* 17 U.S.C.

§ 412. Specifically:

> In any action under this title, other than an action brought for violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(b), **no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for— (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.**

17 U.S.C. § 412 (emphasis added). As demonstrated below, two of Plaintiff's copyrights

clearly require mandatory denial of an award of statutory damages because: (1) the

infringement of the copyright commenced after first publication of the work; (2) the

infringement commenced before the effective date of copyright registration; and (3) the

registration was not made within three months of first publication of the work. *See* 17

U.S.C. § 412(2).

The first copyright has Registration Number VA 1-791-720 for "Libby Turner

TTB026-050." *Cert. of Reg.* [#10-5]. That work was first published on March 24, 2008,

long before the first alleged infringement by Defendant of any of Plaintiff's copyrights

occurred on April 3, 2009. *Id.*; *Compl.* [#1] ¶ 38. The registration date for that work was

September 20, 2011, well after the latest date on which any alleged infringement by Defendant occurred, December 4, 2010. *Cert. of Reg.* [#10-5]; *Compl.* [#1] ¶ 49-50. Finally, the registration on September 20, 2011 occurred more than three months after first publication of the copyrighted work on March 24, 2008. *Cert. of Reg.* [#10-5]. Thus, the Court finds that   Plaintiff may not receive statutory damages in connection with any Photographs or Videos subject to copyright Registration Number VA 1-791-720.

The second copyright has Registration Number VA 1-801-229 for "Libby Turner TTB051-072." *Cert. of Reg.* [#10-6]. That work was first published on April 11, 2006, long before the first alleged infringement by Defendant of any of Plaintiff's copyrights occurred on April 3, 2009. *Id.*; *Compl.* [#1] ¶ 38. The registration date for that copyright was November 4, 2011, well after the latest date on which any alleged infringement by Defendant occurred, December 4, 2010. *Cert. of Reg.* [#10-6]; *Compl.* [#1] ¶ 49-50. Finally, the registration on November 4, 2011 occurred more than three months after first publication of the work on April 11, 2006. *Cert. of Reg.* [#10-6]. Thus, the Court finds that Plaintiff may not receive any statutory damages or attorney's fees in connection with any Photographs or Videos subject to copyright Registration Number VA 1-801-229.

In addition, on April 3, 2009, Defendant uploaded videos from TrueTeenBabes.com and from ModelLibby.com. *Compl.* [#1] at 38-39. Plaintiff does not specify how many Videos came from which website or under which copyright they are registered. Regardless, these Videos were infringed upon before any of the Photographs and Videos received their copyright registrations, the earliest of which was June 30, 2009. *Cert. of Reg.* [#1] at 27. If the Videos used by Defendant on April 3, 2009, were from TrueTeenBabes.com, the infringement was nearly three months before Plaintiff's claimed date of first publication.

*See id.* If they were from ModelLibby.com, or even LibbyTurner.com, then Defendant infringed after the date of first publication, but before the effective date of registration, which in each instance were more than three months apart. *See Cert. of Reg.* [#1] at 26, [#10-3, #10-4, #10-5, #10-6]. Thus, Plaintiff may not receive statutory damages for the alleged infringements occurring on April 3, 2009.

The alleged infringements on October 21, 2009, November 3, 2009, and December 4, 2010 of TrueTeenBabes.com and on May 10, 2010 of ModelLibby.com occurred after the dates of copyright registration for those sites. *See Cert. of Reg.* [#1] at 27, [#10-3, #10-4]; *Compl.* [#1] ¶¶ 41-45, 49-50. Thus, the provisions of 17 U.S.C. § 412 prohibiting awards of statutory damages and attorney's fees do not apply to these alleged infringements.

However, the 813 Photographs and Videos uploaded by Defendant on October 1, 2010 from LibbyTurner.com are a different story. Plaintiff does not allege how many of the Photographs and Videos belong to which LibbyTurner.com copyright and, as already discussed, awards of statutory damages are not available for two of those three copyrights. *See Cert. of Reg.* [#1] at 26, [#10-5, #10-6]. Regardless, this is the only instance in which Plaintiff alleges that Defendant infringed on the LibbyTurner.com copyrighted materials. Further, Plaintiff alleges that at least some of those Photographs and Videos are copyrighted to the LibbyTurner.com copyright for which statutory damages are not barred. Thus, because Plaintiff has sufficiently alleged that at least one Photograph or Video was copyrighted to each LibbyTurner.com copyright, Plaintiff may receive statutory damages for the October 1, 2010 infringement. *See Compl.* [#1] at 47. The Court addresses the number of statutory violations in the following section.

### ii.   Number of Statutory Violations

Plaintiff seeks statutory damages for each individual Photograph and Video uploaded by Defendant. *See Motion* [#33] at 3. However, as discussed above, pursuant to 17 U.S.C. § 412, Plaintiff may not receive statutory damages for alleged violations of two of the copyright registrations. *See Cert. of Reg.* [#10-5, #10-6]. The next question faced by the Court, therefore, is how many of the 3259 Photographs and Videos protected by copyrights and uploaded by Defendant warrant a separate statutory award. *Motion* [#10] at 3.

Plaintiff references three websites in his Complaint: TrueTeenBabes.com, ModelLibby.com, and LibbyTurner.com. *Compl.* [#1] ¶ 2. The 3259 Photographs and Videos were published on the three websites and were copyrighted in six batches. *See Decl. of Grady* [#10-1] ¶ 9-10. In connection with the Photographs and Videos underlying this lawsuit, Plaintiff provides one copyright (VA 1-692-436) for TrueTeenBabes.com, stating that the date of first publication was June 1, 2009. *Cert. of Reg.* [#1] at 27. Plaintiff also provides two copyrights (VA 1-716-734, VA 1-716-735) for ModelLibby.com, with the dates of first publication listed respectively as January 1, 2007 and June 1, 2007. *Cert. of Reg.* [#10-3, #10-4]. Finally, Plaintiff provides three copyrights (VA 1-801-229, VA 1-703-455, VA 1-791-720) for LibbyTurner.com, with the dates of first publication listed respectively as April 11, 2006; September 30, 2006; and March 24, 2008. *Id.* at 26; *Cert. of Reg.* [#10-5, #10-6].

Plaintiff has proceeded under the assumption that Defendant infringed upon his works 3259 times. *Motion* [#33] at 3. However, the Copyright Act "unambiguously provides that a compilation, although composed of separate and independent works, constitutes one work for purposes of calculating statutory damages." *Masterfile Corp. v. Country Cycling*

& *Hiking Tours by Brooks, Inc.*, No. 06 Civ. 6363(SAS)(FM), 2008 WL 313958, at *3 (S.D.N.Y. Feb. 4, 2008) (citation and internal quotation marks omitted).   Although Defendant posted 3259 separate Photographs and Videos on four websites, Plaintiff had previously chosen to register the Photographs and Videos with the Copyright Office as six compilations.   The weight of authority compels the Court to find that, for the purpose of calculating statutory damages, Defendant's infringement of the 3259 Photographs and Videos from the six compilation copyrights only constitutes infringement of six works, as provided by 17 U.S.C. § 504(c)(1).   *See Coogan v. Avnet, Inc.*, No. CV040621PHXSRB, 2005 WL 2789311, at *6 (D. Ariz. Oct. 24, 2005) (holding that a group of photographs that were the subject of a single license agreement constituted "one work"); *Masterfile Corp.*, 2008 WL 313958, at *3 (holding that four separate images copyrighted as a single compilation constituted infringement of "one work" when they were later posted by the defendant on one website); *Stokes Seeds Ltd. v. Geo. W. Park Seed Co., Inc.*, 783 F. Supp. 104, 107 (W.D.N.Y. 1991) (holding that numerous photographs taken from two reference books constituted two statutory violations where the plaintiff had obtained a separate copyright for each book but not for each photograph).   *Cf. Playboy Enter. Inc. v. Sanfilippo*, No. 97-0670-IEG (LSP), 1998 WL 207856, at *5 (S.D. Cal. Mar. 25, 1998) (holding that unauthorized copies of 7475 of the plaintiff's images from one magazine onto the defendant's website constituted 7475 violations, each of which could result in an award of statutory damages, because the plaintiff had obtained separate copyrights for each of the images involved).

Thus, the Court concludes that the circumstances of this case warrant a statutory award for infringement of four works.   *See* 17 U.S.C. § 504(c)(1) (stating that in determining

the amount of statutory damages, "all the parts of a compilation or derivative work constitute one work").

### iii.    Amount of Award

Plaintiff may recover an award of statutory damages "for all infringements involved in the action, with respect to any one work, in a sum of not less than $750 or more than $30,000." 17 U.S.C. § 504(c).  Within these limitations, the Court has broad discretion in awarding statutory damages.  *See, e.g.*, *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986).  By way of example, the Court may consider such things as appropriate compensation for the plaintiff, the need for deterrence and punishment of the defendant, and the degree of culpability in the defendant's infringing conduct.  *See, e.g.*, *id.* at 1117.  The Court may also examine "expenses saved and profits reaped by the infringing party" and "revenues lost by the copyright holder."  *Lifted Research Grp., Inc. v. Behdad*, No. 08-390(CKK), 2010 WL 2662277, at *5 (D.D.C. June 30, 2010).

The Court first examines the degree of culpability in Defendant's infringing conduct.  "Acting 'willfully' means acting with knowledge that one's actions constitute copyright infringement."  *Merchant Media, LLC v. H.S.M. Int'l*, No. 05 Civ. 2817(JES), 2006 WL 3479022, at *4 (S.D.N.Y. Nov. 30, 2006) (citing *Fitzgerald*, 807 F.2d at 1115).  Defendant, over the course of nearly two years, repeatedly bought or downloaded Plaintiff's Photographs and Videos and uploaded them to other websites, at least sometimes receiving money for doing so.  *See, e.g.*, *Compl.* [#1] ¶ 41.  Further, in spite of repeatedly receiving notice of this action, Defendant has failed to appear and defend in this lawsuit, from which inaction may also be inferred his willfulness.  *See, e.g.*, *Merchant Media*, 2006 WL 3479022, at *5.  Based on these facts and allegations, the Court finds that Defendant

acted with a high degree of culpability in his infringement of Plaintiff's copyrights.

In addition to Defendant's culpability, the Court has considered the large number of individual Photographs and Videos redistributed by Defendant; Defendant's repeated redistribution of these works over a nearly two-year period; the fact that Defendant received money for at least some of the redistribution; the unknown but potentially very large number of other persons who received these Photographs and Videos from Defendant, some of whom may have redistributed the Photographs and Videos themselves; and the dilution of the value of Plaintiff's copyrights. *See Lifted Research Grp.*, 2010 WL 2662277, at *5; *Fitzgerald*, 807 F.2d at 1117. Based on these considerations, the Court concludes that the maximum statutory award of $30,000 per infringement is appropriate under these circumstances "to punish plainly deliberate infringing conduct and to deter future violations" by Defendant and others. *See Merchant Media*, 2006 WL 3479022, at *5 (collecting cases awarding high-dollar amounts of statutory damages). Because the Court has found that four of Plaintiff's copyrighted works were violated and subject to statutory damages, the Court **recommends** that Plaintiff be awarded $120,000 in damages.[6]

### b.    Permanent Injunction

To obtain a permanent injunction in a copyright infringement case, the plaintiff must show "both a past infringement and a continuing threat of infringement." *Beginner Music v. Tallgrass Broad., LLC*, No. 09-4050, 2009 WL 2475186, at *2 (D. Kan. Aug. 12, 2009). In this case, injunctive relief is justified based on Defendant's willful violation of Plaintiff's

---

[6]    As previously noted, pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Although the Court has awarded Plaintiff more than he sought for each individual infringement, the amount awarded is well below the total $3,259,000.00 Plaintiff requested in his Complaint.

rights and the need to deter him from future violations.  *See Hermeris, Inc. v. McBrien*, No.

10-2483-JAR, 2012 WL 1091581, at *2 (D. Kan. Mar. 30, 2012).  As Plaintiff argues, "[t]he

sheer volume of the infringement combined with the repeated misconduct over several

years demonstrates that an injunction is necessary and appropriate to deter Defendant."

*Motion* [#33] at 6; *see also Aff. of Grady* [#24-4] ¶ 9 ("Within my investigation I have also

discovered that the Defendant has not ceased his copyright violation activities but has

simply changed screen names and moved to other sites while continuing to post and trade

in materials registered to myself and many other companies or individuals.").  Accordingly,

the Court **recommends** that a permanent injunction be entered against Defendant, as

stated below.  *See Grady*, 2012 WL 370281, at *2.

### c.    Attorneys' Fees and Costs

Pursuant to 17 U.S.C. § 505, the Court may award a reasonable attorney's fee to

the prevailing party in a copyright infringement action.  An award of attorney's fees in a

copyright case depends on the Court's consideration of the following factors: (1)

frivolousness; (2) motivation; (3) "objective unreasonableness (both in the factual and in

the legal components of the case);" and (4) "the need in particular circumstances to

advance considerations of compensation and deterrence."  *Fogerty v. Fantasy, Inc.*, 510

U.S. 517, 535 n.19 (1994).  Based on its consideration of the allegations and filings in this

matter, the Court finds that the allegations underlying Plaintiff's complaint were neither

frivolous nor objectively unreasonable.  *See Arista Records, LLC v. Launch Media, Inc.*,

344 F. App'x 648, 650 (2d Cir. 2009).  In addition, even though the Court found that

Plaintiff's legal analysis regarding statutory damages was not correct, the Court finds that

his argument on that point was not objectively unreasonable. *See id.* at 651. Further, the allegations in the Complaint, taken as true, demonstrate that Defendant's acts were willful and blatantly illegal and that an award of attorney's fees is reasonable to compensate Plaintiff and help deter Defendant from similar future conduct. *See id.* at 651. The Court therefore finds that Plaintiff should be awarded attorney's fees pursuant to 17 U.S.C. § 505.

To determine a reasonable fee award, the Court must conduct a lodestar calculation as set forth in *Hensley v. Eckerhart*, 641 U.S. 424, 433 (1983). *See Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2002). A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate. *Hensley*, 641 U.S. at 433. To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (internal quotation marks omitted). Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).

"Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250. "In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)

(*overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987)).  The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment.  *Case*, 157 F.3d at 1250 ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

### i.   Attorney Andrew J. Contiguglia

Plaintiff has had two lawyers from two different law firms represent him consecutively in this lawsuit, and the Court addresses each separately.  For Attorney Andrew J. Contiguglia ("Contiguglia"), Plaintiff requests an amount of $2,640.00 in attorney's fees. *Motion* [#33-2] at 2, 4.  According to the billing records submitted by Attorney Contiguglia, he charged $200.00 per hour on this matter. [#33-2] at 6.  The Court finds that the hourly rate of $200.00 is reasonable.  *See, e.g., Mrs. Condies Salad Co., Inc. v. Colo. Blue Ribbon Foods, LLC*, No. 11-cv-02118-KLM, 2012 WL 1431371, at *2 (D. Colo. Apr. 24, 2012).

A party seeking an award of attorney's fees must demonstrate that the expenses it seeks are reasonable.  *See Dewey v. Hewlett Packard Co.*, No. 05-cv-01482-REB-MJW, 2007 WL 707462, at *1 (D. Colo. Mar. 5, 2007).  Therefore, counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  Generally, the starting point for any calculation of a reasonable attorney's fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley*, 461 U.S.

at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017–18 (10th Cir. 1996). The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436-37.

The Court exercises its "discretion in making this equitable judgment" and does not "apportion the fee award mechanically" by considering each claimed expense and determining its reasonableness overall. *Hensley*, 461 U.S. at 436-40 (holding that the Court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc.*, 908 F.2d 675, 684-85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute). Based on the undersigned's twenty-nine years of combined private and judicial experience and careful consideration of Attorney Andrew J. Contiguglia's Affidavit [#10-7] and the issues underlying this matter, the Court finds that the claimed attorney's fees are reasonable here, with one exception. *See, e.g., Onesource Commercial Prop. Servs., Inc. v. City & Cnty. of Denver*, No. 10-cv-02273-WJM-KLM, 2011 WL 3583398, at *2 (D. Colo. Aug. 12, 2011). Plaintiff appears to have included the $350.00 he seeks as costs in the amount of attorney's fees requested. *See Invoices* [#10-8] at 3. Thus, the Court **recommends** that Plaintiff should be awarded $2,290.00 in attorney's fees of the $2,640.00 requested for Attorney Contiguglia.

Finally, the Court further finds that the $350.00 filing fee incurred by Plaintiff is a reasonable cost and **recommends** that Plaintiff should additionally be awarded this amount.

### ii.   Attorney Mollie B. Hawes

Turning to Plaintiff's present counsel, Attorney Mollie B. Hawes ("Hawes"), Plaintiff requests an amount of $4,070.00 in attorneys' fees. *Motion* [#33-2] at 2. According to the affidavit submitted by Attorney Hawes, she charged $250.00 per hour on this matter for her time and $100.00 per hour for her paralegal's time. [#33-2] at 1. The Court finds that these hourly rates are reasonable. *See, e.g.*, *Mrs. Condies Salad Co., Inc.*, 2012 WL 1431371, at *2.

Based on the undersigned's twenty-nine years of combined private and judicial experience and careful consideration of Attorney Hawes' Affidavit [#33-2] and the issues underlying this matter, the Court finds that the claimed attorney's fees are reasonable here. *See, e.g.*, *Onesource Commercial Prop. Servs., Inc. v. City & Cnty. of Denver*, No. 10-cv-02273-WJM-KLM, 2011 WL 3583398, at *2 (D. Colo. Aug. 12, 2011). Thus, the Court **recommends** that Plaintiff should be awarded $4,070.00 in attorneys' fees for Attorney Hawes.

Finally, the Court further finds that the $2,333.29 incurred by Plaintiff for Westlaw research costs, photocopies, scanned documents, PACER charges, and investigator fees are reasonable costs and **recommends** that Plaintiff should additionally be awarded this amount. *See* [#33-2] at 2.

### III. RECOMMENDATION

Based on the above analysis,

IT IS RESPECTFULLY **RECOMMENDED** that Plaintiff's Motion [#33] be **GRANTED in part**. Accordingly,

IT IS FURTHER **RECOMMENDED** that a default judgment be entered in favor of Plaintiff and against Defendant in the amount of $129,043.29 (consisting of $120,000 in damages, $2,290.00 in attorneys' fees and $350.00 in costs for Attorney Contiguglia, and $4,070.00 in attorneys' fees and $2,333.29 in costs for Attorney Hawes).

IT IS FURTHER **RECOMMENDED** that a permanent injunction enter enjoining Defendant as follows:

> Defendant shall be and hereby is enjoined from directly or indirectly infringing on the Photographs and Videos from the websites, Photographs, and Videos bearing the United States Copyright Office Registration Nos. VA 1-692-436, VA 1-703-455, VA 1-716-734, VA 1-716-735, VA 1-791-720, VA 1-801-229, et al., including, without limitation, by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiff's copyrighted works, to distribute (i.e., upload) any of Plaintiff's copyrighted works, or to make any of Plaintiff's copyrighted works available for distribution to the public, except pursuant to a lawful license or with the Plaintiff's express consent.

*See Grady*, 2012 WL 370281, at *2.

Pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. CDOC*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v.*

*One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  March 10, 2014          BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge